## EMILE THIBEAULT'S CASE.

## Androscoggin.   Opinion October 25, 1920.

*Workmen's Compensation Act of 1919.   Intent of Act is to compensate an injured
employee for loss of capacity to earn.   The finding of any essential fact in favor
of the claimant without proper evidence, by the chairman of the Indus-
trial Accident Commission, may be ground for attacking the
decree upon appeal.   Decree modified*

The payment to an injured workman under The Workmen's Compensation Act
of 1919 is intended to compensate him for his loss of capacity to earn, which
is measured by the amount earned by him before the injury; in the varying
conditions of work, a period of employment must be taken sufficiently long,
to obtain a fair average of his earnings as a basis of computation, and to show
the variations in his earning power incident to the employment.

By paragraph IX of Sec. 1 (Public Laws 1919, Chap. 238) three methods of
computing the "average weekly wages, earnings or salary" of an injured
employee are stated; these methods are not to be applied in the alternative
as a matter of choice, but are to be applied in the order stated, to the facts as
they exist in the particular case, upon the principle of resorting to the best
evidence obtainable in determining the employee's average wage.

If the chairman of the Industrial Accident Commission applies a wrong rule
of law in computing the average weekly wages of the claimant, or finds any
essential fact in favor of the claimant without proper evidence, the decree may
be attacked upon appeal.

In the instant case the chairman applied the third method of computation, and
found that "having regard to the previous wages, earnings or salary of the
injured employee and of other employees of the same or most similar class,
working in the same or most similar employment in the same or a neighboring
locality" the sum of twenty-seven dollars reasonably represented the weekly
earning capacity of the injured employee at the time of the accident in the
employment in which he was then employed.

*Held:*

Error, because (1) the amount of the previous wages, earnings and salary of the
injured employee was not shown; hence it was impossible to have regard to
such wages; and (2) because the only evidence of wages of other employees
was the schedule of wages of one fellow employee, and the finding can be
supported upon the evidence only by considering the wage schedule of this
fellow employee for six months, being thus limited by the period of claimant's
employment.

The law does not sanction a finding of the average weekly wage of the claimant, based solely upon the wage schedule of a fellow employee for six months; to do so is to sanction the use of a wage schedule of a fellow employee for a shorter period than is permissib e in determining under sub-paragraph (a) the claimant's average weekly wage from a schedule of wages actually earned by him.

The claimant's compensation should have been determined by the second method stated in paragraph IX. The claimant and the fellow employee, whose wage schedule was offered as a standard, were shown to be in the same class.

When the wage schedule of a fellow employee, submitted as a standard, shows reduction in time and output, occasioned by causes incident and common to the employment, and not by causes peculiar to the fellow employee, such fellow employee may still be regarded as working substantially the whole of the year immediately preceding the injury.

If the work is discontinuous, that element must be considered.

This is an appeal from a decree by a Justice of the Supreme Judicial Court, in conformity with a decision of the Industrial Accident Commission, that the claimant be paid by respondent the sum of fifteen dollars per week during such period he is totally incapacitated for work by reason of his injury, beginning on the eleventh day following the date of the accident, and reasonable medical and hospital expenses, less such amount claimant had received as compensation on account of the injury. Appeal sustained. Decree modified by substituting the sum of thirteen dollars and seventy-one cents in place of fifteen dollars as the weekly compensation awarded.

Case is stated in the opinion.

Claimant was not represented by counsel, and *A. L. Thayer, Chairman of the Industrial Accident Commission,* conducted his examination.

*Andrews & Nelson, and Eben F. Littlefield,* for respondents.

SITTING: SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, JJ.

MORRILL, J. The amount of money involved in this case is small, but the decision is important as determining the correct procedure in computing the "average weekly wages, earnings or salary" of an injured employee, under the Workmen's Compensation Act of 1919.

The payment to an injured workman is intended to compensate him for his loss of capacity to earn, which is measured by the amount earned by him before the injury; in the varying conditions of work, a period of employment must be taken sufficiently long, to obtain a fair

average of his earnings as a basis of computation—not his earnings at the time of the injury or for a short period before, when they may be at an unusually low figure, thus operating unfairly to him, or at an unusually high figure, thus operating unfairly to the employer, but taken over a period long enough to show the variations in his earning power incident to the employment. This principle is at the foundation of the theory of compensation embodied in the Maine Act.

By paragraph IX of Sec. 1 (Public Laws, 1919, Chap. 238) the methods of computing the "average weekly wages, earnings or salary" are stated; sub-paragraphs (a), (b), and (c), of that paragraph describe three methods of computation; these methods are not to be applied in the alternative as a matter of choice, but are to be applied in the order stated, to the facts as they exist in the particular case, upon the principle of resorting to the best evidence obtainable in determining the employee's average wage.

The first method, sub-paragraph (a), is to be applied if the injured employee "has worked in the same employment in which he was working at the time of the accident, whether for the same employer or not, during substantially the whole of the year immediately preceding his injury;" and affords the most satisfactory method of determining the employee's actual average wages, earnings or salary.

The statute does not provide for computing the average weekly wage solely from the wages actually earned by the claimant, during a less period than "substantially the whole of the year immediately preceding his injury."

If the first method is not applicable to the facts of the particular case, recourse must next be had, under sub-paragraph (b), to the average daily wages, earnings or salary of "an employee of the same class working substantially the whole of such immediately preceding year in the same or a similar employment, in the same or a neighboring place," as the next most available standard. The language of this sub-paragraph indicates at least two minor degrees of availability; the wages of a substituted employee working in the same employment are a more satisfactory standard than those of one working in a similar employment; and so the wages of one working in the same place are a more satisfactory standard than those of one working in a neighboring place.

If neither of the preceding methods can "reasonably and fairly be applied," the third method, sub-paragraph (c) is to be used.

In the instant case the claimant, at the time of his injury, was working as a weaver in the Bates Mill, and had then been working at that employment for about six months; previous to being so employed he worked at sweeping in the spinning room.    It is therefore conceded that the first method of computation, sub-paragraph (a), cannot be applied.

The appellant contends that the second method, sub-paragraph (b), should have been applied, and that the findings of the chairman of the Commission are not supported by proper evidence and result in the finding of an "impossible wage" upon the evidence.

If the chairman applied a wrong rule of law in computing the average weekly wages of the claimant, or found any essential fact in favor of the claimant without proper evidence, the decree can be attacked on this appeal.    *Mailman's Case*, 118 Maine, 172.

The chairman in his decision held: "From the evidence introduced, the schedule of wages of the fellow employee offered by the insurance carrier did by no means fulfill the requirements of sub- section (b), of paragraph IX of Section 1 of the Act, therefore could not 'fairly and reasonably' be used as a basis of computation of compensation." He then proceeded to find, "that 'having regard to the previous wages, earnings or salary of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or a neighboring locality,' the sum of twenty seven dollars reasonably represents 'the weekly earning capacity of the injured employee at the time of the accident in the employment in which he was engaged at such time';" he thereupon awards compensation at fifteen dollars per week, the maximum provided by the Act.    The procedure was manifestly under sub-paragraph (c).

The chairman's finding of twenty-seven dollars per week, the respondents contend is not supported by any legal evidence.    This contention must be sustained.    The chairman states that he had regard "to the previous wages, earnings and salary of the injured employee."    But the record does not show the amount of such earnings; the claimant was unable to testify thereto in detail, and no schedule of his wages during the period of his employment, or any part thereof, was produced; consequently it was impossible to have regard to such wages.    The chairman also states that he had regard to the previous wages "of other employees of the same or most

similar class." But the only evidence of wages of other employees was the schedule of wages of one Rebecca LaLiberte, submitted by the insurance carrier as a basis of computation of compensation under sub-paragraph (b), which was rejected for that purpose, as not fulfilling the requirements of that sub-paragraph. That schedule shows an average weekly wage of $22.84 for the entire year, while an average of that schedule for the last six months beginning with June shows an average daily wage of $4.724, or an average weekly wage of $27.25 for a year of 300 days. The chairman's finding can be supported upon the evidence only by considering the wage schedule of this fellow employee for six months, being thus limited by the period of claimant's employment. The law does not permit the use of claimant's actual wage schedule for six months, under sub-paragraph (a); nor does it permit the use of a fellow employee's wage schedule for six months, under sub-paragraph (b); in both cases the period for computing the average weekly wage must be substantially one year; we think that it is contrary to the law to base a finding of the average weekly wage of the claimant, solely upon the wage schedule of a fellow employee for six months; to do so is to sanction the use of a wage schedule of a fellow employee for a shorter period than is permissible in determining the claimant's average weekly wage from a schedule of wages actually earned by him. It follows that the chairman's finding is not supported by legal evidence.

The record, however, contains sufficient evidence to enable the court to award compensation.

The claimant presented no evidence from which his actual wages can be determined; the employer presented the wage schedule of a fellow employee, supported by the testimony of claimant's overseer and the clerk in charge of compensation cases; and contended and now contends that compensation should be determined under sub-paragraph (b). The chairman overruled that contention and rejected the schedule presented, by the ruling hereinbefore quoted.

We think that the schedule of the fellow employee met the statutory requirements and could "reasonably and fairly be applied" in determining the claimant's "average weekly wages."

The weaver whose wage schedule was offered as a standard, was a woman, one Rebecca LaLiberte; she had worked in the same room where the claimant was employed for a year or more prior to the accident; she, like claimant, was paid by the piece, and at the same

rate of wages; they worked the same number of hours for a day's work, nine and three quarters hours for five days in a week, and five and one quarter hours on Saturday, or fifty-four hours per week; they were both capable of operating six looms when work ran full, and were subject to the same contingencies of short work incident to the operation of the mill at the time in question; the woman was of the same earning capacity as the claimant as disclosed by a comparison of the payrolls of both for six weeks prior to the injury, as made and testified to by the overseer. We think that they must be considered "of the same class."

The wage schedule submitted began with the last week in November, 1918, and ended with the week of November 22, 1919; the total time was two hundred and forty working days; during the first six months the weekly wage ranged between seven dollars and ninety-nine cents, and eighteen dollars and thirteen cents, with one week at twenty-three dollars and thirteen cents; during the last six months the weekly wage ranged from twenty dollars and twenty-three cents to thirty dollars and eighty-six cents, with two weeks at seventeen dollars and ninety-one cents, and ten dollars and seven cents, respectively; this weekly wage varied with the supply of work necessary to keep the maximum of six looms running; for two weeks in January and four consecutive weeks in February and March the employee did not work.

The question is: Can this employee, whose wage schedule was submitted, be said to have worked "substantially the whole of such immediately preceding year?" The answer must depend upon whether the reduced time, and reduction in the number of looms operated was occasioned by causes incident and common to the employment, or from causes peculiar to the employee. If the latter class of causes was operative, the wage schedule cannot be applied to determine the claimant's earning capacity. "The object sought is the ascertainment of the earning capacity of the workman as shown by his constant employment in the past, in order that the remuneration after shall have relation to the remuneration before the injury." *Hight* v. *Manufacturing Co.*, 116 Maine, 81, 85. Computation of the wages actually earned by the employee "during substantially the whole of the year immediately preceding the injury" being impossible, the next most reliable basis of computation is to be used if available, viz: the wage schedule of a fellow employee of the same class

"working substantially the whole of such immediately preceding year." It is clear that if such substituted wage schedule is reduced in amount by causes incident and common to the employment, the injured employee could not have earned more than the employee whose schedule is substituted, earned. The inquiry is: What were the claimant's average weekly wages, computed by the statutory method, having regard to the known and recognized incidents of the employment, including the element of discontinuance? If the work is discontinuous, that is an element which cannot be overlooked. *Littler* v. *George A. Fuller Co.*, 223 N. Y., 369; 119 N. E., 554. "The object of the Act broadly stated is to compensate a workman for his loss of capacity to earn, which is to be measured by what he can earn in the employment in which he is, under the conditions prevailing therein, before and up to the time of the accident." *Anslow* v. *Cannoch Chase Colliery Co.*, 1909, A. C., 435.

The Legislature has seen fit to establish certain fixed methods for computing "average weekly wages." The result may be said to be an artificial average; but it is the standard established by the Act. At the present point in the case we are concerned with the question whether Rebecca LaLiberte was an employee "working substantially the whole of such immediately preceding year;" we think she must be so regarded. The relation of employer and employee was not interrupted; the mill regularly ran during the whole of the year, and the loss of time and reduction of wages resulted from the suspension of government work following the armistice and the change to the regular product of the mill, temporarily affecting all weavers alike. The testimony on this point is undisputed.

We are of the opinion that upon the evidence presented the average weekly wages should have been computed under sub-paragraph (b) of paragraph IX of Section I, giving an average weekly wage of twenty two dollars and eighty-four cents, and a weekly compensation of thirteen dollars and seventy-one cents. The decree must be modified accordingly.

In view of the somewhat meagre evidence presented before the chairman, we take this occasion to say that in all cases where compensation under sub-paragraph (b) or sub-paragraph (c) may be resorted to, a full wage schedule of the injured employee for the whole period of his employment should be presented; and where a wage schedule of a fellow employee is relied upon, wage schedules of more

than one such fellow employee should be produced if available; comparison may then be made by the chairman in the presence of the parties and witnesses, and a better understanding of the incidents of the employment be obtained.

> *Appeal sustained.*
> *Decree modified by substituting*
> *the sum of thirteen dollars and*
> *seventy-one cents in place of*
> *fifteen dollars as the weekly*
> *compensation awarded.*