## WALLACE J. MORIARTY'S CASE

### Androscoggin.   Opinion September 9, 1927.

*Under the Workmen's Compensation Act "Policemen" are employees of the city or town whose authorization is restricted within the limits of such city or town, whether appointed by elected local officials of such city of town, or appointed by officers appointed by the Governor and Council by virtue of a legislative act creating a commission.*

*The presumption of the law is against self-murder, and stands unless and until prima facie evidence is adduced by the opposite party.*

In this case the finding by the commission that the death of the husband of the petitioner resulted from an accident between which and his employment there was causative connection, had sufficing legal foundation, and so had the finding that the injury was experienced in the course of employment.

On appeal.  A petition of Yvonne Moriarty as dependent widow of Wallace J. Moriarty, a policeman of the city of Lewiston, who was found, soon after going on duty, in the toilet of the Maine Central Railroad station with a bullet wound in his neck which two days later proved fatal. ˙ Upon a hearing compensation was awarded and an appeal taken from an affirming decree by the city of Lewiston.  Appeal dismissed with costs.  Decree below affirmed.

The case fully appears in the opinion. ₒ

*Frank A. Morey*, for petitioner.

*Frank T. Powers and Fernand Despins*, for the City of Lewiston. ˙

*Franklin Fisher*, for the State of Maine.

SITTING:  WILSON, C. J., PHILBROOK, DUNN, DEASY, PATTANGALL, JJ.

DUNN, J.  An appeal by the city from the decree on the award under the Workmen's Compensation Act (1919 Laws, Chap. 238 as amended) to the widow of the Lewiston policeman whose death resulted from a firearm wound.

The inquiries are:  (a) Whether, within the meaning of the workmen's act, the policeman was to be regarded as having been in the employ of the city of Lewiston, at the time the wound was inflicted? (b) If he were such employee, whether the finding of causative connection between his employment and the violent and external means which effected his death, was warranted?  (c) Whether there was any competent basis for the decision that the fatal injury occurred in the course of the policeman's employment?  The immediate facts were not in controversy.

Wallace J. Moriarty, a special patrolman in Lewiston, was found dying in a toilet room in a railroad station at a terminus of his beat, soon after beginning duty on September 11, 1925.

When found in the toilet, he was sitting on the floor, his back against the fastened door.  He had been shot in the left side of his neck.  Beside him was his revolver; if any chamber in the revolver were empty does not appear.

The bullet in its course involved the upper part of the man's chest, lanced his windpipe, plowed through the left collar bone, and fractured the first two ribs on Mr. Moriarty's right side.  Two days later he died.

The principal duty of police officers, viz., the preservation of the public peace within certain territorial limits, is a matter of public concern, and hence policemen are properly designated as state or public officers.

It is usual for police officers to be appointed by cities and towns, or by designated officials in cities or towns, in 'virtue of' delegation of power by the State; but the power to appoint can be entrusted to any other political agency.

Police officers find their authority in the statute book.  In executing authority, policemen are free from control by the appointing power, notwithstanding the municipalities in which they serve are required to pay them.

Were there no more to be noticed, it would be clear that police officers ought not be regarded as bearing a contractual relation to the city or town wherein it is for them to discharge duty.

But in relevancy to this case there is more to be noticed.  The Workmen's Compensation Law provides that policemen shall be counted employees.  This is the salient provision of the statute:

"Policemen * * * shall be deemed employees within the meaning of this act. If, however, any policeman * * * claims compensation under this act, there shall be deducted from such compensation any sum which such policeman * * * may be entitled to receive from any pension or other benefit fund to which the state or municipal body may contribute." 1919 Laws, Chap. 238, Sec. 1.

A dependent, and the widow in this cause is conclusively presumed to be a dependent, stands in the stead of the dead employee.

It has been argued at the bar, and rightly enough, that the statute puts policemen into two distinct classes: One, that of state policemen, e. g., highway police, who are appointed by a state official, in the general acceptance of that expression, and the range of whose authorization is not restricted to a city or a town; and, second, policemen appointed by other officials, technically styled public officials, but popularly spoken of as municipal or local officials, as mayors, or other city officers, or selectmen in towns.

Further argument is that, as the now deceased policeman was not appointed by officials who themselves had been elected or appointed in and by Lewiston, but was appointed by officers appointed by the Governor with the advice and consent of the Executive Council, the policeman became and was an employee of the State of Maine. The argument falls short of convincing force.

"The police force of the city of Lewiston" is chosen by a legislatively created commission. And the Legislature has decided this were good for Lewiston. P. & S. L. 1917, chap. 37; 1919, chap. 17.

The legislative creation was a new and superseding political agency. Thereby municipal authority in Lewiston was shorn of the police-appointing prerogative. A board of police commissioners was named and organized. The province of the board, as defined by the Legislature, was to establish and appoint the police force of the city of Lewiston, with all the powers that the mayor, the municipal officers, or the city council of Lewiston had at the time of the legislation.

Upon his appointment, it was for the patrolman who now is dead, to take the same constitutionally defined oaths, and to enforce the same laws and preserve the same peace within the same limits, as would have been the case had his appointment been by local officials in Lewiston. And his pay was from the same city treasury.

No one living knows how the revolver was fired that denied Mr. Moriarty the privilege of living out all the days of his life. No direct evidence tended to show that he was guilty of his own death. The circumstantial evidence, together with all inferences which might legitimately be drawn therefrom, was before the Industrial Accident Commission member who sat to try the facts, and the decision of the trier has been recorded.

There are only five things that the printed words on the pages of the record, as those words have been illumined by the arguments of counsel, justify this opinion in saying by way of conclusion.

First, that, within the purview of the compensation act, the death of Wallace J. Moriarty was caused by an accident, was determined by the Industrial Commission member, and the decision of that mixed question of law and fact has been accepted by the city of Lewiston, as final.

Second, it cannot be said as a matter of law that Mr. Moriarty wilfully intended to bring about the injury which caused his death.

Third, love of life is presumed. Men naturally heed the instinct of self-preservation. The presumption of the law is against self-murder. The presumption which prevails that, until the contrary is established, it will be assumed that injury was not self-inflicted, is entitled to probative force. *Westman's Case*, 118 Maine 133. A presumption serves in the place of evidence, until prima facie evidence is adduced by the opposite party. Of suicide the evidence had not proof in the estimate of the commissioner.

Fourth, the finding that the death of the man resulted from an accident, between which and the man's employment there was causative connection, had sufficing legal foundation.

Fifth, and so had the finding that the injury was experienced in the course of employment.

*Appeal dismissed with costs.*
*Decree below affirmed.*