Charles J. ST. PIERRE

v.

ST. REGIS PAPER COMPANY.

Supreme Judicial Court of Maine.

May 17, 1978.

Pelletier & Lavertu by Rudolph T. Pelletier, Madawaska (orally), for plaintiff.

Mitchell, Ballou & Keith by Kevin M. Cuddy, Bangor (orally), for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

Charles J. St. Pierre petitioned the Industrial Accident Commission, pursuant to 39 M.R.S.A. § 102 (Supp.1973), to annul or amend an agreement for compensation he had entered into with his employer, St. Regis Paper Company (St. Regis). The commission dismissed his petition and, after obtaining the necessary pro forma decree from the Washington County Superior Court, the employee appealed to this court.

We sustain the appeal.

On April 1, 1976, petitioner St. Pierre suffered a compensable injury during his sixth week of employment by St. Regis as a laborer. Shortly thereafter, St. Regis mailed St. Pierre, who is a resident of Blue River in the Province of Quebec, a proposed agreement for compensation stating, in part, that St. Pierre's "average weekly wage" was $174.89. The employee signed and returned the agreement as directed. In March 1977 St. Pierre filed the petition involved in the present appeal, claiming a "mutual mistake" had been made in the agreement as to the correct amount of his average weekly wage. He alleged that his average weekly earnings during the year

prior to his employment by St. Regis amounted to much more than the $174.89 figure and that at the time he signed the agreement "I could not read or write the English language . . . , the agreement was not explained to me, the only thing I was told relative to the agreement was that I had to sign it in order to get my benefits."

The parties stipulated to the following facts. Prior to St. Pierre's employment with St. Regis, he had been employed by Joseph Paradis[1] from August 1975 to February 1976. During the 2C weeks of his job with Paradis, he had earned an average of $223.82 per week. St. Pierre's wages varied from $119.23 to $276.06 per week during his six weeks of employment by St. Regis. In the year prior to the date of St. Pierre's injury, Maurice Bonneau, whom the parties now stipulate to be a "comparable employee" of St. Regis, had earned an average of $174.89 per week.

After ruling that subsection 2(C) of 39 M.R.S.A. § 2 stated the controlling method for computing St. Pierre's "average weekly wages" for purposes of determining his statutory workmen's compensation benefits, the commission dismissed the petition because it concluded that the figure of $174.89, based upon the earnings of the "comparable employee" Bonneau, correctly represented St. Pierre's "average weekly wages" under the applicable standard of computation. Implicit in the commission's dismissal was its conclusion that no mistake, whether of "fact" or "law," had been made by either party in signing the compensation agreement.

■ After an employer and employee enter into an agreement for compensation, which is duly approved, either party may petition the commission for annulment pursuant to 39 M.R.S.A. § 102 (Supp.1973). Section 102 permits the commission to annul the agreement "provided it finds that such agreement was entered into through mistake of fact *by said petitioner* or

through fraud." (Emphasis added) Although petitioner St. Pierre alleged that a "mutual mistake of fact" had taken place, the statute clearly permits the commission to grant an annulment upon finding a mistake on the part of the petitioner alone. On the record before us, we find that a mistake did occur in the manner of computing St. Pierre's average weekly wages and that in signing the compensation agreement petitioner labored under a "mistake of fact" within the meaning of section 102.

The computation of an injured employee's "average gross weekly wages" is an essential step in determining the rate of compensation due from his employer to him, or to his dependents in the event death results from his injury. *See* 39 M.R.S.A. §§ 54, 55, 58 (Supp.1977). Section 2(2) of Title 39 sets forth several methods of computing the injured employee's " 'average weekly wages, earnings or salary.' " The method of computation applicable to the employee depends upon the length of his employment by his employer at the time of injury and the degree to which his weekly wages were constant or variable. The three methods prescribed in section 2(2) "are not to be applied in the alternative as a matter of choice, but are to be applied in the order stated, to the facts as they exist in the particular case, upon the principle of resorting to the best evidence obtainable in determining the employee's average wage." *Thibeault's Case,* 119 Me. 336, 338, 111 A. 491, 492 (1920).

Paragraph A of section 2(2) establishes the usual rule of computation. It provides:

> " 'Average weekly wages, earnings or salary' of an injured employee *shall be taken as the amount which he was receiving* at the time of the injury for the hours and days constituting a regular full working week *in the employment or occupation in which he was engaged when injured, provided such employment or occupation had continued on the part of the*

---

1. The record before the court is completely inadequate to determine whether St. Pierre's job with Paradis was similar to his St. Regis job, the exact nature of which also is not identi-

fied in the record. In any event, however, our disposition of this case is affected in no way by St. Pierre's employment by Paradis.

*employer for at least 200 full working days during the year immediately preceding said injury.* Except that in the case of piece workers and other employees whose wages during said year have generally varied from week to week, such wages shall be averaged in accordance with the method provided under paragraph B." (Emphasis added)

In the present case the commission correctly ruled that St. Pierre's wages could not be determined by applying the first or usual method. The employment or occupation in which St. Pierre was engaged when injured had not continued "on the part of the *employer*," i. e., St. Regis,[2] for at least 200 full working days during the year immediately preceding his injury.

. The commission next concluded that the method of computation contained in paragraph B of section 2(2) also was inapplicable to determine petitioner's "average weekly wages." That paragraph provides:

"*In case such employment or occupation had not so continued for said 200 full working days, the 'average weekly wages, earnings or salary' shall be determined by dividing the entire amount of wages or salary earned therein* by the injured employee during said immediately preceding year, *by the total number of weeks*, any part of which the employee worked, during the same period. The week in which employment began, if it began during the year immediately preceding the injury, and the week in which the injury occurred, together with the amounts earned in said weeks, shall not be considered in computations under this paragraph if their inclusion would reduce said 'average weekly wages, earnings or salary.'" (Emphasis added)

St. Pierre's counsel contends that on its face paragraph B applies because "such employment or occupation had not so continued for said 200 full working days," and to that extent we agree. Counsel goes on to argue, however, that method B would average the entire amount that St. Pierre earned during the immediately preceding year in the employ of either St. Regis or Joseph Paradis; St. Pierre in working for Paradis was, his counsel contends, working in the same "occupation" as when working for St. Regis. As to this asserted construction of paragraph B we do not agree. Although the record is insufficient to establish factually that St. Pierre engaged in the same "occupation" for Paradis as for St. Regis, we shall assume such to be the fact; but still paragraph B does not permit the averaging in of St. Pierre's earnings from that other employer. The words "such employment or occupation" appearing at the outset of paragraph B, tied as they are to the noncontinuation of "such employment or occupation" "for said 200 full working days," must have reference back to employment or occupation under paragraph A "on the part of the employer" at the time of the injury, i. e., St. Regis on our present facts. The patent intent of the statute was to make method A—the average of the employee's actual wages for at least 200 working days in the prior year—the preferred method if the particular facts permitted; and the statute placed method B—the average of the employee's actual wages for a shorter period than 200 days—second in the order of preference, if the shorter period's figures were the best actual figures available. Thus, if method B were applied St. Pierre's "average weekly wages" would be the average of his six weeks' earnings with St. Regis, dropping out of the average the

**2.** The workmen's compensation law as originally enacted in 1915, in the comparable paragraph (2) under the definition of "average weekly wages, earnings or salary," provided an averaging of the injured employee's wages "in the same employment in which he was working at the time of the accident, *whether for the same employer or not.*" (Emphasis added) 1915 Laws, ch. 295, § 1 (IX)(a). When the legislature changed the language of that paragraph to substantially that of our present workmen's compensation law, R.S.1930, ch. 55, § 2 (IX)(a), using the language "provided such employment or occupation has continued on the part of the employer" *etc.*, it plainly intended to restrict the employee's wages which were to be averaged under that paragraph to those received from the single employer at the time of the injury.

first and the last weeks if their inclusion would reduce the average.

However, the statute does not stop with methods A and B.[3] A third method is prescribed in paragraph C for the special circumstances where either of the other methods "cannot reasonably and fairly be applied." In those circumstances method C supersedes either of the prior methods, even though by its facial terms standing alone one of them would be the controlling computation. In paragraph C the statute for the first time departs from averaging the actual wages of the injured employee and directs the factfinder instead to determine his earning capacity, giving due consideration to specified factors, including the actual earnings of other employees. Paragraph C reads as follows:

> "In cases *where the foregoing methods* of arriving at the 'average weekly wages, earnings or salary' of the injured employee *cannot reasonably and fairly be applied,* said 'average weekly wages' shall be taken at such sum as, having regard to the previous wages, earnings or salary of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or a neighboring locality, shall reasonably represent the *weekly earning capacity* of the injured employee at the time of the accident in the employment in which he was working at such time." (Emphasis added)

On the facts of the case at bar, method C supersedes method B. On this record it is apparent that an average of at most six weeks of St. Pierre's wages at St. Regis "cannot reasonably and fairly be applied" to determine his "average weekly wages" for compensation purposes. The inapplicability of method B arises not only from the shortness of St. Pierre's period of St. Regis employment, but also from the wide fluctuation in weekly earnings typical of St. Pierre's type of employment. St. Pierre's own earnings at St. Regis changed from $175.97 in the second week to $276.06 in the very next week. The "comparable employee" Bonneau had weekly earnings as low as $49.71 and as high as $287.04. On the facts of this case the commission was justified in concluding that application of method B would unfairly subject both the employer and the employee to the fortuities of working conditions during a short span of time. *Scott's Case,* 121 Me. 446, 449, 118 A. 236, 237 (1922).

Although the commission correctly ruled that resort to paragraph C was necessary in order to determine St. Pierre's "average weekly wages," it erred in interpreting and applying that provision. The "comparable employee" Bonneau's earnings with St. Regis week by week for the year preceding St. Pierre's injury were set forth in the

3. Although the original 1915 forerunner of section 2 prescribed three methods of computation of "average weekly wages" differing in some respects from the present methods, the "A, B, C" framework therein was the same, and the following discussion of the statute, as amended to 1919, by Chief Justice Cornish continues to have vitality for purposes of construing the present statute:

> "The distinction between method 'c' and the previous 'a' and 'b' are clearly marked. In 'a' and 'b' the 'average weekly wages, earnings or salary' are determined with mathematical exactness. It is a matter of multiplication and division. The quotient represents the weekly average in fact as well as in name. The factors are all present from which such accurate reckoning can be made. But in many cases, where those factors are lacking, as in the case at bar, some other method needed to be devised in order to fairly compensate injured workmen. The average weekly wage could not be computed in fact from actual earnings of a year, and therefore an arbitrary method must be found, and, 'c' is that arbitrary and, in a sense, artificial method. In 'a' and 'b' the average weekly wage is positively ascertained from given data. In 'c' such wage is 'taken' or assumed on an entirely different basis. In 'a' and 'b' the basis of the average weekly wage is actual earnings for a year; in 'c' the basis is the weekly earning capacity in the same employment at the time of the accident. Such earning capacity in 'c' is substituted for actual earnings under 'a' and 'b', and is made to arbitrarily stand for and represent the average weekly wage called for by the act as the basis of recompense. It is average weekly wage in name, but not necessarily in fact." *Scott's Case,* 121 Me. 446, 448–49, 118 A. 236, 237 (1922).

parties' stipulation. They averaged to $174.89 per week. The commission stated in its decree that

> "the petitioner's average earnings in this case should be computed on the basis of a comparable employee's earning because although Paragraph 2, 2c, of the Act states that we should 'have regard' to the employee's previous wages the intent which emerges from that paragraph when read in its entirety is that we should determine an employee's earning capacity in the *job he was doing when injured.*" (Emphasis in original)

The statute is, however, unambiguous on that point. Due regard *must* be given both to St. Pierre's own previous "wages, earnings or salary" and to the earnings of other *employees* "of the same or most similar class, working in the same or most similar employment in the same or a neighboring locality." Paragraph C in effect broadly requires regard to be given to any factors *relevant* to determining the injured employee's earning capacity on his job just prior to the injury. During his short employment with St. Regis, St. Pierre had averaged over $200 per week in earnings, and, as his "previous earnings," that had to be taken into account. In addition, under appropriate circumstances paragraph C's reference to "the previous wages, earnings or salary of the injured employee" must be extended to wages received from other employers; that is, the scope of the search for relevant evidence of the employee's own earning capacity under paragraph C extends beyond computing the arithmetic averages of the prior wages he had received from a single employer prescribed by paragraphs A and B.[4]

■ Finally, paragraph C plainly mandates that consideration be given to the earnings of similarly situated employees, *in the plural.* The picking of a single "comparable employee" and the averaging of that single employee's wages during the preceding year does not comply with the statute's requirement.[5] Except by the rarest of coincidences, choice of even one "comparable

4. Given the necessary evidentiary foundation, which is lacking in the present case, the commission would by paragraph C have had to give regard to St. Pierre's earnings when employed by Paradis. On the specific facts of this case, St. Pierre had earned during his previous employment for 20 weeks by Paradis an average of about $224 per week. In order for the commission to take those particular "previous wages, earnings or salary of the injured employee" into account, however, the employee had to lay a factual foundation showing that his Paradis job was closely similar to his St. Regis job and that his Paradis job was "in the same or a neighboring locality." Only in that way would the record of St. Pierre's Paradis earnings have *relevance* to his earning capacity at St. Regis. *Cf.* M.R.Evid. 401. In the exercise of its rulemaking power under 39 M.R.S.A. § 92 (1964), the Industrial Accident Commission on April 26, 1978, adopted the Maine Rules of Evidence for purposes of proceedings before it. *See Blackwelder v. Hemingway Transport, Inc.,* Me., 383 A.2d 1091, n. 1 (1978).

5. That the "comparable employee" shortcut does not meet the requirements of paragraph C is emphasized by its legislative history. The original workmen's compensation law contained a third method of computation that was for present purposes identical to the present paragraph C. 1915 Laws, ch. 295, § 1 (IX)(c). However, the second method specified in the original law—standing in the next higher order of preference, similar to present paragraph B— used in effect an average for a *single* comparable employee, very similar to what the employer and the commission in the present case mistakenly used to determine St. Pierre's "average weekly wages." In that original law that second method read as follows:

> "(b) If the injured employee has not so worked in such employment during substantially the whole of such immediately preceding year, his 'average weekly wages' shall be three hundred times the average weekly wages, earnings or salary which an *employee of the same class working substantially the whole or such immediately preceding year in the same or a similar employment, in the same or a neighboring place,* has earned in such employment during the days when so employed and working the number of hours constituting a full working day in such employment, divided by fifty-two." (Emphasis added) 1915 Laws, ch. 295, § 1 (IX)(b).

Plainly, when paragraph (c) in the original law, now preserved virtually unchanged as paragraph C, spoke of "other employees of the same or most similar class, working in the same or most similar employment in the same or a neighboring locality," the legislature never contemplated that a single employee's average earnings would satisfy the search for the injured employee's "earning capacity."

employee" in addition to Bonneau would have changed, either up or down, the resulting arithmetic average. Even that, however, would not satisfy the statute. While the technique of designating a single "comparable" worker has the advantage of administrative convenience to recommend it, that method of computation is unduly restrictive and, as the facts of the present case illustrate, may well disadvantage the employee by ascribing to him lower "average weekly wages" than he is by law entitled to. Manifestly, both St. Regis and the commission erred in failing to give due regard to all the factors enumerated in paragraph C.[6]  Cf. Thibeault's Case, supra at 119 Me. 339–40, 111 A. at 492.  Cf. also New England Tel. & Tel. Co. v. Public Utilities Commission, 148 Me. 374, 388–40, 94 A.2d 801, 808–10 (1953) (failure of Public Utilities Commission to comply with statute requiring it to give "due consideration [to] the fair value of all [the public utility's] property"). Whatever greater burden is imposed upon the parties and the commission by our reading of paragraph C to require more than merely averaging the wages of a single "comparable employee" is required, we believe, by the clear intendment of the statute. The legislature alone has the authority to authorize such an administrative shortcut or any other rule of convenience that those administering the Workmen's Compensation Act may devise.

The statement in the agreement signed by St. Pierre that his "average weekly wages" were $174.89 was in actuality a mistake. It would be a most unlikely coincidence if a factfinder correctly applying paragraph C (i. e., having regard for St. Pierre's own previous earnings and for the earnings of other similarly situated employees) happened to come out to the penny at Bonneau's average earnings in the prior year.

Having thus concluded that indeed St. Pierre entered into the compensation agree-

ment with St. Regis through a mistake, i. e., an erroneous belief that his average weekly wages for compensation purposes were $174.89, we are brought to the question whether under the facts of this case such mistake was one "of fact by said petitioner" entitling him to obtain annulment of the agreement pursuant to section 102. We conclude that it was indeed a mistake of fact on his part.

■ A mistake of fact occurs either when some fact which really exists is unknown or some nonexistent fact is supposed to exist. See, e. g., Kennie v. City of Westbrook, Me., 254 A.2d 39, 42–43 (1969). In the present case, in submitting the compensation agreement to St. Pierre for signing, St. Regis stated to him that his "average weekly wages" for compensation purposes were $174.89. Implicit in that statement was a representation of fact that St. Regis had gone through the statutorily required steps to determine the $174.89. The employee, whether from language deficiencies or from confidence in the superior knowledge of his self-insured employer, signed without question what St. Regis had done. In fact, St. Regis had not taken all the steps required by paragraph C—it had given no regard to St. Pierre's own previous earnings or the earnings of any similarly situated employees other than Bonneau. The petitioning employee entered into the compensation agreement, assuming erroneously that St. Regis had actually done those things mandated by the statute. That erroneous assumption inducing the employee to sign the agreement was a "mistake of fact by said petitioner" under section 102. The commission possesses the necessary statutory authority to annul the original compensation agreement and should do so, leaving the employee free to pursue whatever remedies are available to him in absence of a binding agreement.

6. Compare Scott's Case, supra, 121 Me. at 449, 118 A. at 237, in which this court upheld the commission's determination of the injured employee's average weekly wage, noting that "[a]ll the facts, for which the statute says the chairman shall have regard in making up his estimate, were in evidence here, and from them all he fixed the weekly earning capacity at the time of the accident in this employment." (Emphasis added)

The entry must be:

Appeal sustained;

Pro forma decree of the Superior Court vacated;

Remanded to the Industrial Accident Commission for further proceedings consistent with this opinion; and

It is further ordered that the appellee pay to the appellant an allowance of $550 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.