Lionel LANDRY

v.

**BATES FABRICS, INC.**

Supreme Judicial Court of Maine.

July 20, 1978.

Berman, Berman & Simmons by Jack H. Simmons (orally), Lewiston, for plaintiff.

Norman & Hanson by Robert F. Hanson (orally), Portland, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

The sole issue before us in this appeal from a pro forma decree affirming the decision of the Industrial Accident Commission, is the appropriate method, under 39 M.R.S.A. § 2(2), of computing the wages of an employee who sustained an injury arising out of and in the course of his employment. That the injury is compensable is conceded.

The controversy arose from the following. The employee/appellee Lionel Landry had been employed at Bates Fabrics, Inc. (Bates) since June of 1946. Since 1950 he had been employed as a loom fixer and was paid at an hourly rate. He continued in that employment until he received an injury on September 21, 1976, which is the source of this appeal.

Mr. Landry was employed on a steady 40-hour work week basis and had been paid at the rate of $4.145/hour, ever since a pay raise went into effect on April 15, 1976. As his wage statement showed, however, Mr. Landry was only paid for hours actually worked. Moreover, the wage statement reflected only amounts paid to Mr. Landry before the wage increase went into effect. It is undisputed that Mr. Landry frequently missed time at work for personal reasons, including sick time and union work. Accordingly, he was frequently paid less than he would have been entitled to had he worked a full 40-hour week. The wage statement, therefore, shows considerable fluctuation in the payments to Mr. Landry.

After the accident, Mr. Landry signed an agreement for payment of compensation which was approved by the Bureau of Labor on November 3, 1976. In that agreement the employee's "average weekly wage" was computed as $147.23. Two-thirds of this amount was calculated as $98.15 which was then used as the compensation rate. Believing that this amount was too low, the employee subsequently brought a petition to annul the agreement, alleging that the agreement was the result of mistake of fact or of fraud. A petition for award of compensation was also filed.

The Industrial Accident Commission agreed with the employee's contentions and annulled the original agreement, allowing the petition for award of compensation to proceed. After hearing, the Commission granted the petition for award and allowed compensation at the rate of $110.53 per week.[1] Bates now contests this rate, claiming the Commission committed an error of law in computing Mr. Landry's rate of compensation under 39 M.R.S.A. § 2(2)(A).

Bates' first contention on appeal is that when an average weekly wage is computed, the computation must literally "average" the weekly wages paid to the employee. Bates' other contention is that the average weekly wage rate should have been computed under 39 M.R.S.A. § 2(2)(B) since Mr. Landry is an employee "whose wages during said year have generally varied from week to week."

We deny the appeal.

The statutory scheme for determining average weekly wages was set out fully in our recent decision in *St. Pierre v. St. Regis Paper Co.*, Me., 386 A.2d 714 (1978). We there noted the three possible methods of determining wages under 39 M.R.S.A. § 2(2), and stated that "[t]he method of computation applicable to the employee depends upon the length of his employment by his employer at the time of injury[2] and the degree to which his weekly wages were constant and variable." *Id.* at 716. We further noted that the three methods of computation were not to be applied as a matter of choice but "'. . . are to be applied in the order stated, to the facts as they exist in the particular case . ..'" *Id., quoting Thibeault's Case*, 119 Me. 336, 338, 111 A.2d 491, 492 (1920).

The usual method of computation is found in paragraph (A) of § 2(2). This method provides that the amount which the

1. While the computations used to reach this figure do not appear in the record, it is clear that this figure was calculated under the method provided in 39 M.R.S.A. § 2(2)(A).

2. It is clear from the facts of this case that Mr. Landry had been employed for well over the 200 days required by § 2(2)(A).

employee was receiving at the time he was injured shall be deemed the average weekly wage so long as the employee has continued in his employment for 200 working days. The paragraph provides further, however, that:

> . . . in the case of piece workers and other employees whose wages during said year have generally varied from week to week, such wages shall be averaged in accordance with the method provided under paragraph B.

Paragraph (B) then provides a method of averaging the employee's wage. Finally, in the event neither paragraphs (A) nor (B) apply, paragraph (C) provides a method for determining wages whereby the employee's actual wages as well as wages earned by other employees in comparable positions are taken into account.

■ By the very terms of this statutory scheme it is apparent that Bates' first contention must fail. By providing three different methods of determining "average weekly wages" the Legislature clearly did not intend that an employee's prior wages necessarily be "averaged" in determining the wage rate, regardless of which paragraph is deemed to apply.

Bates' second contention, however, raises a question which has not yet been decided by this Court. Bates argues that the above quoted portion of paragraph (A) requires that Mr. Landry be paid according to paragraph (B) because his wages varied from week to week. This result should obtain, Bates continues, notwithstanding the fact that the variations in the employee's pay result, not from job-related influences, but from personal reasons. In other words, Bates asks us to decide that paragraph (A) is inapplicable, even though an employee might be employed full-time on a steady basis, where the employee does not consistently put in a steady work week. We reject this contention.

■ An examination of the first three paragraphs in § 2(2) reveals the error in Bates' reasoning. On the one hand are employees who work a "regular full working week." Their wages are computed under paragraph (A). On the other hand are employees who do not fall into that classification. These are taken care of under paragraphs (B) or (C). It seems reasonable, therefore, to conclude that the Legislature intended to classify employees by the *type* of employment they engage in, *i. e.* whether the employment inherently permits a regular full working week. Thus, employees such as Mr. Landry would come within the terms of paragraph (A).

■ This focus on the terms of the employment, rather than on the employee, is not inconsistent with the second portion of paragraph (A) which creates an exception for "piece workers and other employees whose wages during said year have generally varied from week to week." In speaking of "piece workers and other employees" the Legislature necessarily intended that the *type* of employment be taken into consideration, whether it be piece work or seasonal or subject to other inherent variations, when computing compensation.

■ While we have discovered no cases construing a statute directly analogous to ours, our interpretation above is supported by general principles enunciated in other jurisdictions. The general purpose of statutes designed to compute "average weekly wages" is to provide a method of arriving at an estimate of the employee's future earning capacity as fairly as possible. *E. g. Triano v. Carbon Steel Products Corp.*, 63 N.J. 226, 306 A.2d 437 (1973); 2 A. Larson, *The Law of Workmen's Compensation* § 60.00 (1976). Such a purpose is apparent in our own statute. Thus, recognizing that employment circumstances may vary significantly from employment to employment, the Legislature has created alternative methods of computing compensation.

■ Our statutory scheme then provides a method of predicting what the employee would continue to earn had no injury occurred. *See Thibeault's Case*, 119 Me. 336, 337, 111 A. 491, 491 (1920). It is the ability to work at available full-time employment in the future that should be compensated. *McPhearson v. Hunt Lumber Co.*, 158 So.2d

430, 431 (La., 1963). In a case such as the instant one where an employee is steadily employed for a regular number of hours each week, the fairest method of predicting his earning capacity is to base the prediction on the fact that he has the potential, arising from the terms of his employment, for steady, regular employment. *Cf. McPhearson v. Hunt Lumber Co., supra* (construing statute which computed weekly wage by multiplying daily wage by six days, regardless of the fact that the employee may not actually have worked all six days). The potential for this type of employment is clearly best ascertained by examining the terms of the employment. The fact that Mr. Landry did not always work the full 40-hour week to which he was entitled therefore becomes irrelevant.

Bates has not raised any objection to Mr. Landry's attempt to annul the prior agreement nor does it contest the manner in which paragraph (A) was applied by the Commission. Therefore, having rejected all the contentions raised, the entry must be:

Appeal denied.

Judgment affirmed.

Further ordered that the appellant pay to the appellee an allowance for counsel fees in the amount of $550.00, together with his reasonable out-of-pocket expenses for this appeal.