## Maria FERNALD

v.

## DEXTER SHOE CO.

Supreme Judicial Court of Maine.

Argued Nov. 1, 1995.

Decided Feb. 5, 1996.

Douglas J. Alofs (orally), James P. Dunleavy, Dunleavy Law Offices, P.A., Presque Isle, for Employee.

Jane E. Skelton (orally), Rudman & Winchell, Bangor, for Employer.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA and LIPEZ, JJ.

DANA, Justice.

The employee, Maria Fernald, appeals from a decision of the Workers' Compensation Commission denying her petition to determine her average weekly wage. Fernald contends that the commissioner erred in applying 39 M.R.S.A. § 2(2)(B) (1989), based on a finding that her earnings varied from week-to-week. Because the fluctuations of her earnings were modest and may have been largely due to absences for personal reasons, we vacate the Commission's decision.

Fernald suffered a work related injury in March 1990 while employed at Dexter Shoe Co. Fernald was originally hired to work a forty-hour week, consisting of nine hours per day, Monday through Thursday, and four hours on Friday. Fernald frequently worked less than forty hours-per-week due, in part, to illness and personal reasons and, in part, to Friday shut-downs of the Dexter plant. Fernald left her employment in October 1991 and Dexter began paying her total incapacity benefits of $148.14, based on an average weekly wage of $221.21. Dexter calculated the wage pursuant to 39 M.R.S.A. § 2(2)(B), by dividing the total wages from the previous year by 52, the number of weeks employed. 39 M.R.S.A. § 2(2)(B) (1989). Fernald filed a petition to determine her average weekly

**1384**

wage in 1992, contending that the wage should be calculated pursuant to subsection 2(2)(A), which would require the multiplication of her most recent hourly rate, $5.80, by forty, the number of hours in her regular work week. 39 M.R.S.A. § 2(2)(A) (1989). On November 3, 1992 the Commission denied the petition, concluding that "because her wages varied during the year, the wages must be averaged in accordance with the methodology provided under 39 M.R.S.A. § 2(2)(B)." The Commission denied Fernald's timely motion for findings of fact and Fernald appealed to the Appellate Division, which failed to resolve the appeal before going out of existence on January 1, 1994. We granted Fernald's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1994–95).

■ Calculation of an employee's "average weekly wage" is governed by four alternative methods outlined in 39 M.R.S.A. § 2(2)(A), (B), (B–1) & (C) (1989).[1] The four methods of computing average weekly wage must be analyzed in the order that they appear. *St. Pierre v. St. Regis Paper Co.,* 386 A.2d 714, 716 (Me.1978); *Thibeault's Case,* 119 Me. 336, 338, 111 A. 491, 492 (1920). The first method applies to employees who have been employed for at least 200 days prior to the injury and whose wages do not "generally vary from week to week." 39 M.R.S.A. § 2(2)(A) (1989).[2] For those whose wages do "generally vary from week to week" the appropriate method for calculating the average weekly wage is subsection B. *Nielsen v. Burnham & Morrill, Inc.,* 600 A.2d 1111, 1112 (Me.1991). 39 M.R.S.A. § 2(2)(B) (1989).[3]

■ As we have stated, the fact that an employee frequently missed time from work for personal reasons is not relevant to the issue of whether an employee's earnings vary from week to week for purposes of section 2(2). *Landry v. Bates Fabrics, Inc.,* 389 A.2d 311, 313–14 (Me.1978). The variable nature of an employee's wages depends on the *"type* of employment"—"whether the employment inherently permits a regular full working week," and whether the employee "has the potential, arising from the terms of his employment, for steady, regular employment." *Id.* at 313–14. The Commission in this case did not base its finding of a variable work week solely on the number of hours that Fernald lost from work for personal business or illness. The Commission also considered the occasional Friday shutdowns or work stoppages that affected all employees in the plant, and, arguably, had become an inherent feature of her employment.

---

1. 39 M.R.S.A. §§ 2(2)(A) and (B) have been repealed and replaced by Title 39–A. Maine Workers' Compensation Act of 1992, P.L.1991, ch. 885, § A–7 (effective January 1, 1993) (codified as 39–A M.R.S.A. §§ 102(4)(A), (B) (Supp.1994–95)). Because the proceeding was pending on the effective date of Title 39–A, this appeal is governed exclusively by former Title 39. *Riley v. Bath Iron Works,* 639 A.2d 626, 627–28 (Me.1994).

2. Subsection 2(2)(A) provides, in pertinent part:
   A. "Average weekly wages, earnings or salary" of an injured employee shall be taken as the amount which he was receiving at the time of the injury for the hours and days constituting a regular full working week in the employment or occupation in which he was engaged when injured.... Except that in the case of piece workers and other employees whose wages during that year have generally varied from week to week, such wages shall be averaged in accordance with the method provided under paragraph B.
   39 M.R.S.A. § 2(2)(A) (1989), *repealed and replaced by* P.L.1991, ch. 885, § A–7 (effective January 1, 1993) (codified as 39–A M.R.S.A. § 102(4)(A)).

3. Subsection B provides:
   B. In case such employment or occupation had not so continued for said 200 full working days, the "average weekly wages, earnings or salary" shall be determined by dividing the entire amount of wages or salary earned therein by the injured employee during said immediately preceding year, by the total number of weeks, any part of which the employee worked, during the same period. The week in which employment began, if it began during the year immediately preceding the injury, and the week in which the injury occurred, together with the amounts earned in said weeks, shall not be considered in computations under this paragraph if their inclusion would reduce said "average weekly wages, earnings or salary."
   39 M.R.S.A. § 2(2)(B) (1989), *repealed and replaced by* P.L.1991, ch. 885, § A–7 (effective January 1, 1993) (codified as 39–A M.R.S.A. § 102(4)(B)).

Although a finding of frequent work stoppages inherent in an industry may support a conclusion that an employee's wages varied from week to week for purposes of subsections 2(2)(A) and (B), the actual lost time due to work stoppages in this case is unclear. The "variability" of an employee's wages must necessarily depend on the number of hours lost in a work week and the frequency of that loss. It is a question of degree. There is nothing in the record to indicate the frequency of the work stoppages or the total number of hours lost due to work stoppages in the preceding year. Although Dexter calculated that Fernald worked an average of 36.30 hours per week, there is nothing in the record to indicate what proportion of the hours lost was due to work stoppages in contrast to vacations, illness, or other personal matters.

Although, as a general matter, the petitioning party bears the burden of proof on all issues, we have recognized exceptions to that rule when placing the burden on the moving party is impractical or unreasonable. *See, e.g., Nichols v. Cantara & Sons,* 659 A.2d 258, 262–63 (Me.1995) (on an employer's petition for a set-off against a third-party recovery, the employee bears the burden to prove that no portion of a third-party settlement is allocable to a spouse's loss of consortium); *Ibbitson v. Sheridan Corp.,* 422 A.2d 1005, 1011 (Me.1980) (once the employer shows that a totally incapacitated employee has regained some physical capacity on an employer's petition for review, the employee bears the burden of production on the issue of work search); *Fecteau v. Rich Vale Constr.,* 349 A.2d 162, 166 (Me.1975) (presumption that post-injury earnings accurately reflect earning capacity); *Moriarty's Case,* 126 Me. 358, 361, 138 A. 555, 556–7 (1927) (presumption against finding suicidal death); *Mailman's Case,* 118 Me. 172, 181–3, 106 A. 606, 610–1 (1919) (inference that fatality results from work related injury; later codified in 39 M.R.S.A. § 64–A (1989)). Because the employer generally has better access to records regarding work hours and lost time, it is reasonable that an employer contending that a calculation of the average weekly wage must be made pursuant to subsection 2(2)(B) should bear the burden of showing that the variability of the employee's earnings is inherent in the employment rather than attributable to the hours lost due to vacations, illness, or other personal matters.

Although we do not decide the exact degree of business related fluctuation necessary to constitute wages that "generally vary from week to week" for purposes of section 2(2), we hold that evidence of occasional plant closings, without any showing of their frequency, is not sufficient to trigger application of subsection 2(2)(B).

The entry is:

Decision of the Workers' Compensation Commission vacated. Remanded to the Board for further proceedings consistent with the opinion herein.

All concurring.