Colleen VALLIERE

v.

**WILLIAM UNDERWOOD
COMPANY, et al.**

Supreme Judicial Court of Maine.

Argued Jan. 7, 1988.
Decided Feb. 29, 1988.

Kenneth W. Hovermale, Jr. (orally), Bornstein & Hovermale, Portland, for plaintiff.

Christopher C. Dinan (orally), Monaghan, Leahy, Hochadel & Libby, Portland, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

The employee, Colleen Valliere, appeals from a decision of the Appellate Division of the Workers' Compensation Commission upholding the Commissioner's denial of her petition to annul an agreement for compensation with her employer, William Underwood Company ("Underwood"). On appeal, the employee contends *inter alia* that the Appellate Division misinterpreted the statutory method of computing wages for purposes of compensation under the Workers' Compensation Act. We find no error and affirm the judgment of the Appellate Division.

The parties stipulated to the following facts before the Commission. The employee began her employment with Underwood on May 2, 1982. Until November 8, 1982, she was concurrently employed at the Sheraton Inn. On December 8, 1982, she suffered a work-related injury at Underwood and she was totally incapacitated from February 1, 1983, to March 26, 1983, and again from October 18, 1983, to January 9, 1984. The parties entered into an agreement as to payment of compensation. The average weekly wages set forth in the agreement represented an average of employee's earnings at Underwood from May 2, 1982, through December 8, 1982 and did not reflect any earnings from concurrent employment. The employee subsequently filed a petition to annul the agreement, together with a petition for award, claiming a mistake of fact on the basis that the average weekly wages in the agreement were incorrectly computed. Finding no mistake, the Commissioner denied the petition to annul. The Commissioner concluded that the Sheraton wages should not be included in the computation of average weekly wages pursuant to 39 M.R.S.A. § 2(2)(D) (1978), because the employment was not concurrent with her employment at Underwood at the time of the injury. The Appellate Division affirmed the Commissioner's decision and

we granted the employee's request for review.

■ The issue before us is whether concurrent employment must exist on the date of injury in order for wages earned in that concurrent employment to be included in the computation of the employee's average weekly wages pursuant to 39 M.R.S.A. § 2(2) (1978 & Supp.1987). The employee directs our attention to 39 M.R.S.A. § 2(2)(D), which provides as follows:

> Where the employee is employed regularly in any week concurrently by 2 or more employers, for one of whom he works at one time and for another he works at another time, his "average weekly wages" shall be computed as if the wages, earnings or salary received by him from all such employers were wages, earnings or salary earned in the employment of the employer for whom he was working at the time of the injury.

Focusing strictly on subsection D, she contends there is no requirement that an employee must be employed concurrently by two employers *at the time of the injury* in order to have the wages of such concurrent employment included in the computation. She further contends that in the context of this case, the reference in subsection D to an employee being employed concurrently "in any week" can only refer to the "weeks" included in the mathematical averaging procedure set forth in section 2(2)(B).

All sections of a statute must be read together and be construed as a whole in order to effectuate legislative intent. *Bolduc v. Androscoggin County Comm'rs*, 485 A.2d 655, 658 (Me.1984). Subsection D of 39 M.R.S.A. § 2(2) is preceded by three alternative methods of computing average weekly wages[1] dependent "upon the length of [the worker's] employment by his employer at the time of injury and the degree to which his weekly wages were constant or variable." *Fowler v. First Nat'l Stores, Inc.*, 416 A.2d 1258, 1260 (Me.1980) (quoting *St. Pierre v. St. Regis Paper Co.*, 386 A.2d 714, 716 (Me.1978)). Subsection D is not an independent alternative method of computing average weekly wages, but rather is ancillary to subsections A through C.

In the present case, the average weekly wages were computed in accord with the method set forth in section 2(2)(B). We have previously held that "in computing the average weekly wage under method B, as with computation under Method A, only the employment relation that exists at the time of injury can be considered." *Fowler*, 416 A.2d at 1260 (citing *St. Pierre v. St. Regis Paper Co.*, 386 A.2d 714, 717 (Me. 1978)). Method B excludes from computation the wages earned and the weeks worked in a former occupation. *Id.* at 1261. Because subsection D is subordinate

---

1. 39 M.R.S.A. § 2(2) provides in pertinent part:
   **2. Average weekly wages.**
   **A.** "Average weekly wages, earnings of (sic) salary" of an injured employee shall be taken as the amount which he was receiving *at the time of the injury* for the hours and days constituting a regular full working week in the employment or occupation in which he was engaged when injured ... provided such employment or occupation had continued on the part of the employer for at least 200 full working days during the year immediately preceding that injury. ...
   **B.** In case such employment or occupation had not so continued for said 200 full working days, the "average weekly wages, earnings or salary" shall be determined by dividing the entire amount of wages or salary earned therein by the injured employee during said immediately preceding year, by the total number of weeks, any part of which the employee worked, during the same period. The week in which employment began, if it began during the year immediately preceding the injury, and the week in which the injury occurred, together with the amounts earned in said weeks, shall not be considered in computations under this paragraph if their inclusion would reduce said "average weekly wages, earnings or salary."
   **C.** In cases where the foregoing methods of arriving at the "average weekly wages, earnings or salary" of the injured employee cannot reasonably and fairly be applied, said "average weekly wages" shall be taken at such sum as, having regard to the previous wages, earnings or salary of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or a neighboring locality, shall reasonably represent the weekly earning capacity of the injured employee at the time of the injury in the employment in which he was working at such time.
   (1978 & Supp.1987) (emphasis added).

to the method of computation in subsection B, only the employment relationship existing at the time of injury can be considered.

The interpretation we adopt is consistent with the underlying purpose of section 2, which is "to determine future earning capacity on the basis of employment or occupation at the time of injury." *Fowler*, 416 A.2d at 1261. In this case, the employee terminated her employment with the Sheraton a month before the date of injury. Because she was not concurrently employed on the date of injury, the Commissioner did not err in considering only her employment with Underwood in determining her current earning capacity. The remaining issues raised on appeal require no discussion.

The entry is:

Judgment affirmed.

It is further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550 together with reasonable out-of-pocket expenses for this appeal.

All concurring.