Kurt FRANK

v.

MANPOWER TEMPORARY SERVICES

and

Commercial Union Insurance Co.

Supreme Judicial Court of Maine.

Argued Sept. 4, 1996.
Decided Dec. 24, 1996.

Arthur H. Dumas (Orally) Sanford, for Employee.

Douglas R. Lotane (Orally) Piampiano & Gavin, Portland, for Employer.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

RUDMAN, Justice.

Kurt Frank appeals from a decision of the Workers' Compensation Board granting his petition for award and calculating his average weekly wage as a seasonal employee pursuant to 39–A M.R.S.A. § 102(4)(C) (Supp.1996). Frank contends that because he was hired through his employer, a temporary agency, to work for Unico for an indefinite period of time immediately prior to his injury, it was error for the Board to treat his employment as seasonal. We agree and vacate the decision of the Board.

Twenty-three years of age at the time of his injury on February 3, 1993, Frank had a history of sporadic, short-term employment. From 1990 to 1992, he had been employed as a construction worker for Talbot Construction. Because he was paid "under the table," he had no documentary proof of his earnings. Although he had sought employment through Manpower since 1991, his employment opportunities were limited because he had no access to transportation. He was given his first work assignment through Manpower in January, 1993, when he was employed as a factory worker for less than two weeks. Approximately one week after this temporary assignment ended, Frank was assigned to Unico, where he worked full-time earning $6.00 an hour. He was informed by Unico at the time of the assignment that the duration of the job was "indefinite."

Frank suffered a work-related injury on February 22, 1993, after working for Unico for approximately one-to-two weeks. Unico accepted the injury pending investigation and filed a wage statement showing a weekly wage of $151.30. Manpower unilaterally revised its determination of the wage to $11.64 to reflect seasonal worker status. In 1995 the Board awarded Frank short-term total benefits ending in June 1993. The Board concluded "the employee did not meet his burden of proving average weekly wage and exclusion from seasonal worker status," and therefore that Manpower had correctly calculated his average weekly wage as a seasonal employee. We granted Frank's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1996).

As the Board observed in its decision, "the initial issue presented by the parties is a calculation of the average weekly wage." The term "average weekly wages" is statutorily defined in Subsection 102(4) of Title 39–A.[1] The Board unnecessarily directed its

---

1. Subsection 4 of Section 102 of Title 39–A provides in part:

The term "average weekly wages" or average weekly earnings or salary is defined as follows:

A. "Average weekly wages, earnings or salary" of an injured employee means the amount that the employee was receiving at the time of the injury for the hours and days constituting a regular full working week in the employment or occupation in which the employee was engaged when injured: ...

B. When the employment or occupation did not continue pursuant to paragraph A for 200 full working days, "average weekly wages, earnings or salary" is determined by dividing the entire amount of wages or salary earned by the injured employee during the immediately preceding year by the total number of weeks, any part of which the employee worked during the same period....

C. Notwithstanding paragraphs A and B, the average weekly wage of a seasonal worker is determined by dividing the employee's total wages, earnings or salary for the prior calendar year by 52.

(1) For the purpose of this paragraph, the term "seasonal worker" does not include any employee who is customarily employed, full time or part time, for more than 26 weeks in a calendar year. The employee need not be employed by the same employer during this period to fall within this exclusion.

(2) Notwithstanding subparagraph (1), the term "seasonal worker" includes, but is not limited to, any employee who is employed directly in agriculture or in the harvesting or initial hauling of forest products.

D. When the methods set out in paragraph A, B or C of arriving at the average weekly wages, earnings or salary of the injured employee can not reasonably and fairly be applied, "average weekly wages" means the sum, having regard to the previous wages, earnings or salary of the injured employee and of other employees of the same or most similar class working in the same or most similar employment in the same or a neighboring locality, that reasonably represents the weekly earning capacity of the injured employee in the employment in which

attention to Paragraph C. Paragraphs A, B and C of the statute refer to the type of employment the injured employee is engaged in. Calculation of the employee's average weekly wage is thereby mandated by the type of employment for which the employee was hired. The average weekly wage for employees who have been employed on a full time basis is to be calculated pursuant to Paragraph A. The average weekly wage for an employee whose employment continued for less than 200 working days is calculated pursuant to Paragraph B. The average weekly wage for a seasonal employee is calculated pursuant to Paragraph C. When Paragraphs A, B or C are not appropriate, the average weekly wage is to be calculated pursuant to Paragraph D.

■ The purpose of the average weekly wage calculation is to arrive at an estimate of the "employee's *future earning capacity* as fairly as possible." *Fowler v. First Nat'l Stores, Inc.*, 416 A.2d 1258, 1260 (Me.1980) (quoting *Landry v. Bates Fabrics, Inc.*, 389 A.2d 311, 313 (Me.1978)). The Board found not only that Frank did not meet his burden of proving his average weekly wage but also imposed on him the burden of proving exclusion from seasonal worker status. Though we agree the employee must offer evidence to establish his or her average weekly wage, *White v. Monmouth Canning Co.*, 228 A.2d 795, 801 (Me.1967), the statute does not place a burden on the employee to prove that he is not a seasonal employee.

■ There is nothing seasonal about Frank's employment. The word "seasonal" implies the work must have some relation to the seasons. According to Webster's Dictionary, the word "seasonal" means "[o]f, pertaining to, occurring at, or affected by the season or seasons; as, *seasonal* storms; *seasonal* industries." *Webster's New Collegiate Dictionary* 763 (2nd ed.1959). Seasonal em-

ployment is employment that is inherently seasonal in nature, and not merely employment that is less than 26 weeks in duration.[2] As Professor Larson states, pursuant to ordinary seasonal wage statutes, "it is the inherent seasonal nature of the employment that controls, not the claimant's seasonal connection with it." *See* 2 A. Larson, *The Law of Workmen's Compensation*, § 60.22(a), n. 39 (1993). Subparagraph 1 in Paragraph C is an "exclusion" to the definition of a "seasonal worker." The word "exclusion" suggests that the employee must first qualify as a "seasonal worker" and then meet the additional criteria of having worked less than 26 weeks in a calendar year.

■ The record reflects in the instant situation that Frank did offer evidence of his prior work history, as well as his employment at the time of his injury and the fact that he was informed by Unico at the time of his employment that the duration of the job was "indefinite." As we said as early as 1920, the methods of computing the average weekly wage described in Paragraphs A, B and C are not to be applied in the alternative as a matter of choice, but are to be applied in the order stated, to the facts as they exist in the particular case, on the principle of resorting to the best evidence obtainable in determining the employee's average wage. *Thibeault's Case*, 119 Me. 336, 338, 111 A. 491 (1920). The Board erred by its failure to follow the statutory mandate. To the extent the Board determined Paragraph A was not applicable, it should then have proceeded to calculate Frank's average weekly wage on the basis of Paragraph B, and to the extent that the methods set out in Paragraphs A or B could "not reasonably and fairly be applied," the Board should have invited evidence and determined Frank's average weekly wage on the basis of Paragraph D. Accordingly, we vacate the decision of the Board.[3]

---

the employee at the time of the injury was working....

2. One employed as a ski instructor or a summer camp counsellor is a seasonal employee.

3. The Appellate Division of the former Workers Compensation Commission considered a similar issue in *Silvius v. Manpower Temp. Servs.*, Me.

W.C.C.App.Div. 3835, 3836–37 (Me.1989). In *Silvius*, the employee was also a temporary employee of Manpower and had "worked several different job assignments during [the] year and was paid different wages." The Commission calculated the employee's average weekly wage pursuant to Subsection B (39 M.R.S.A. § 22–B) based on his total earnings for Manpower in the immediately preceding year. *Id.* at 3836. Rely-

The entry is:

Decision of the Workers' Compensation Board vacated and remanded for further proceedings consistent with the opinion herein.

WATHEN, C.J., ROBERTS, GLASSMAN, and DANA, JJ., concurring.

LIPEZ, Justice, with whom CLIFFORD, Justice joins, dissenting.

I respectfully dissent. The Board first had to determine the nature of Frank's employment for the purpose of arriving at his earning capacity. The Board concluded that Frank's temporary work assignment at Unico could not be regarded as his employment for the purpose of determining his average weekly wage. I would affirm that conclusion. In *Fowler v. First Nat'l Stores, Inc.*, 416 A.2d 1258, 1259–60 (Me.1980), an employee who had been with the company for six months was promoted from a grocery store clerk to a produce manager one week prior to her injury. We held that the Commission should have regarded the employee's promotion to produce manager as the acquisition of a new occupation and calculated the average weekly wage according to her higher salary at the time of her injury. *Id.* at 1261. As the former Workers' Compensation Commission Appellate Division stated in *Silvius v. Manpower Temp. Servs.*, Me.W.C.C.App. Div. 3835, 3836–37 (Me.1989), however, every work assignment obtained through a temporary agency will not automatically constitute the acquisition of a new occupation for purposes of *Fowler*.

The Board was not compelled in this case to find that Frank had acquired a new occupation after working at Unico for less than two weeks. As the Court states, Frank had been informed that the duration of the Unico assignment was "indefinite." Such a characterization does not necessarily mean that the Unico employment would continue "indefinitely" in the absence of an injury, and we should not substitute our interpretation of the facts for that of the hearing officer. Moreover, Frank was an employee of Manpower, a temporary agency, at the time that he went to work with Unico.[1] He had only received two short-term jobs through Manpower during his three year association with the agency and neither job lasted longer than two weeks. Given these facts, the Board reasonably concluded that Frank's employment at the time of his injury included his temporary position at Unico and other short-term jobs. Therefore, to consider only his earnings at Unico, and to extend those wages over a 52-week period, would result in an excessively high average weekly wage.

I must also disagree with the Court's suggestion that subsection C is not implicated in this case. 39–A M.R.S.A. § 102(4)(C) (Supp. 1996). The Court states that "[t]o the extent the Board determined Paragraph A was not applicable, it should then have proceeded to calculate Frank's average weekly wage on the basis of Paragraph B, and to the extent that the methods set out in Paragraphs A and B could 'not reasonably and fairly be applied,' the Board should have invited evidence and determined Frank's average weekly wage on the basis of Paragraph D." Although subsections (A), (B) and (D) should be applied in the order they appear, an employee's seasonal status, and therefore subsection

---

ing on *Fowler*. the employee contended that his wage should have been based on his most recent employment with G.T.E. Sylvania. *Id.* The Appellate Division disagreed, stating that:

> The evidence presented in the instant appeal gives no indication that the employee received a promotion when he was assigned to a temporary position at G.T.E. Sylvania. Mr. Silvius had not acquired a new occupation when he went from one temporary position to another; he was merely assigned to a new job when his earlier position ended. It is just as likely that the employee could have been assigned to Manpower to a temporary position which paid the employee less than some of his

earlier temporary positions. It is just such a fortuity inherent in temporary service jobs which renders the employee's arguments with regard to *Fowler* inappropriate. The absence of permanency involved in these successive job assignments is significant because the goal of establishing the injured worker's future earning capacity is gauged by 'the length of [the worker's] employment by his employer at the time of injury and the degree to which his weekly wages were constant or variable.'

*Id.* at 3836–37 (quoting *Fowler*, 416 A.2d at 1260).

1. Indeed, his employer for purposes of liability was Manpower, not Unico.

C, could be considered in any case when the duration of employment does not meet the standard of 200 full working days, the requirement of Paragraph A. This is so because, contrary to the Court's statement that "Paragraphs A, B and C of the statute refer to the type of employment the employee is engaged in," subsections A and B focus only on the duration of the employment. The subsections that address the type of employment are subsection C, dealing with seasonal employment, and subsection E, dealing with concurrent employment. Both of these situations, seasonal employment or concurrent employment, must be considered in conjunction with the subsection A or B durational requirement. Indeed, as I interpret the Court's analysis, the Court applies subsection C to conclude that Frank's part-time employment at the time of his injury, i.e., his temporary assignment with Unico, was not seasonal.

Because Frank's temporary work assignment with Unico did not constitute the acquisition of a new occupation pursuant to *Fowler*, the Board was permitted to examine Frank's recent employment history as a construction worker for Talbot Construction from 1990 to 1992 to determine if that employment was seasonal. I agree with the Court that "seasonal employment" pursuant to subsection 102(4)(C) should be defined as employment that is inherently seasonal in nature, and not merely employment that is less than 26 weeks in duration. To the extent that the Court concludes that Frank's construction work for Talbot was not seasonal in nature, however, I disagree.

The Court cites Professor Larson, who states that "it is the inherent seasonal nature of the employment that controls, not the claimant's seasonal connection with it." 2 A. Larson, *The Law of Workmen's Compensation*, § 60.22(a), n. 39 (1993). Professor Larson refers in this note to the case of a student who works only in the summer months, but whose employment is not inherently seasonal in nature. *Id.* (citing *May v, James H. Drew Shows, Inc.*, 576 S.W.2d 524 (Ky.Ct.App.1978)). Frank's employment differed from that of a student employee. Based on Frank's testimony, the Board found that Frank worked for Talbot "when there was construction work available," that the work "was dependent upon the weather and that there generally was a slow season between October and February." The inherent nature of the work made the job seasonal.

Because the Board reasonably concluded that Frank's construction work was seasonal in nature, the Board was then required to determine whether Frank was "customarily" employed for more than 26 weeks in a calendar year. 39–A M.R.S.A. 102(4)(C)(I). As the Board stated, Frank presented evidence concerning the nature of his employment with Talbot, but did not provide evidence to show "how many weeks he worked [for Talbot] or how much he earned during that time." Based on the nature of his employment with Talbot and Frank's inability to provide any evidence of the number of weeks he worked for Talbot, the Board did not err in determining that Frank's employment was seasonal in nature for purposes of subsection 102(4)(C) and that he was "customarily employed" for less than 26 weeks in a calendar year. Moreover, because Frank failed to show any earnings from his employment with Talbot, the Board did not err in excluding those earnings from the calculation of his seasonal wage.

Finally, I also disagree with the Court's statement of the burden of proof in this case. The issue for purposes of the subsection 102(4)(C)(1) exclusion is whether the employee is "customarily" employed for more than 26 weeks in a calendar year. Subsection (C)(1) provides that the employee "need not be employed by the same employer during this period" to fall within the 26 week exclusion. 39–A M.R.S.A. 102(4)(C). It is implicit from this language that the Board may consider the employee's overall work-history, including work for other employers, to determine whether an employee is customarily employed, full-time or part-time, for more than 26 weeks in a calendar year. Because the employer does not ordinarily have access to employment records from other employers, the Board did not err in requiring Frank to bear the burden of proving his employment history with Talbot. Accordingly, I

would affirm the decision of the Workers' Compensation Board.