1997 ME 224

Donna **HARRIGAN**

v.

**MAINE VETERANS HOME.**

Supreme Judicial Court of Maine.

Argued Oct. 7, 1997.

Decided Nov. 24, 1997.

---

Robert J. Piampiano (orally), Troubh, Heisler & Piampiano, P.A., Portland, for employee.

Robert W. Kline (orally), Lisa M. Fitzgibbon, Carl W. Tourigny, Kline Law Offices, Portland, for employer.

Mark A. Cloutier, Cloutier, Barrett, Cloutier & Conley, P.A., Portland, for Maine Oil Dealers Ass'n Workers' Comp. Trust, amicus curiae.

* Dana, J., sat at oral argument but did not participate thereafter.

1. Maine Veterans argues persuasively that the Board erred in concluding that Harrigan's net

Evan M. Hansen, Elizabeth J. Wyman, Preti, Flaherty, Beliveau & Pachios, Portland, for a ad hoc group of self-insureds, amicus curiae.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA * and LIPEZ, JJ.

CLIFFORD, Justice.

██ [¶ 1] The employer, Maine Veterans Home, appeals from a decision of the Workers' Compensation Board, granting the employee's petition for award. Because we agree with Maine Veterans' contention that the employee's concurrent employment as a cashier at an amusement park was seasonal and that the Board should have calculated her earnings from that employment pursuant to 39–A M.R.S.A. § 102(4)(C) (Supp.1996) to arrive at her average weekly wage, we vacate the decision of the Board.

[¶ 2] Donna Harrigan was employed at Maine Veterans Home. Harrigan had a second job as a cashier at Palace Playland, an amusement park in Old Orchard Beach, where she worked roughly 14 weeks a year during the summer season when Palace Playland was open, from June until Labor Day. Harrigan suffered a work-related injury on August 4, 1994 at Maine Veterans. On Harrigan's petition for award, the Board calculated an average weekly wage from Maine Veterans in the amount of $196.84. 39–A M.R.S.A. § 102(4)(B) (Supp.1996). Maine Veterans contended before the Board, as it does on appeal, that Harrigan's concurrent employment at Palace Playland was seasonal within the meaning of 39–A M.R.S.A. § 102(4)(C), and that pursuant to that section her average weekly wage from that employment should be calculated by dividing her total earnings from Palace Playland by 52 weeks in a year, resulting in a concurrent weekly wage of $31.63. The Board rejected Maine Veterans' contention. Taking Harrigan's concurrent wage from Palace Playland of $160 a week,[1] and applying 39–A M.R.S.A.

weekly earnings at Palace Playland were $160. On remand, however, the Board must calculate Harrigan's average weekly wage from Palace Playland pursuant to section 102(4)(C).

§ 102(4)(E) (Supp.1996), the Board added the two average wages to arrive at a total average weekly wage of $356.84. 39–A M.R.S.A. §§ 102(4)(B) & (E). We granted Maine Veterans' petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1996).

## I.

[¶ 3] The methods for calculating the "average weekly wage" are set out in 39–A M.R.S.A. §§ 102(4)(A), (B), (C) & (D) (Supp. 1996). Those methods must be analyzed for application in the order that they appear. *Frank v. Manpower Temp. Servs.*, 687 A.2d 623, 625 (Me.1996). The first method applies when an employee has been employed for at least 200 full working days during the immediately preceding year prior to the injury. 39–A M.R.S.A. § 102(4)(A) (Supp.1996). The second method applies to employees who are employed for fewer than 200 days or whose earnings vary from week to week:

**B.** When the employment or occupation did not continue pursuant to paragraph A for 200 full working days, "average weekly wages, earnings or salary" is determined by dividing the entire amount of wages or salary earned by the injured employee during the immediately preceding year by the total number of weeks, any part of which the employee worked during the same period. The week in which employment began, if it began during the year immediately preceding the injury, and the week in which the injury occurred, together with the amounts earned in those weeks, may not be considered in computations under this paragraph if their inclusion would reduce the average weekly wages, earnings or salary.

39–A M.R.S.A. § 102(4)(B). The third method applies to "seasonal employees:"

**C.** *Notwithstanding paragraphs A and B, the average weekly wage of a seasonal worker is determined by dividing the employee's total wages, earnings or salary for the prior calendar year by 52.*

(1) For the purpose of this paragraph, the term "seasonal worker" does not include any employee who is customarily employed, full time or part time, for more than 26 weeks in a calendar year. The employee need not be employed by the same employer during this period to fall within this exclusion.

(2) Notwithstanding subparagraph (1), the term "seasonal worker" includes, but is not limited to, any employee who is employed directly in agriculture or in the harvesting or initial hauling of forest products.

39–A M.R.S.A. § 102(4)(C) (emphasis added).

[¶ 4] The fourth method applies when none of the first three methods can be reasonably and fairly applied. 39 M.R.S.A. § 102(4)(D). The concurrent employment provision, subsection E, provides:

When the employee is employed regularly in any week concurrently by 2 or more employers, for one of whom the employee works at one time and for another of whom the employee works at another time, the employee's average weekly wages are computed as if the wages, earnings or salary received by the employee from all such employers were wages, earnings or salary earned in the employment of the employer for whom the employee was working at the time of the injury.

39–A M.R.S.A. § 102(4)(E).

[¶ 5] There is no dispute that because Harrigan was not employed at Maine Veterans for 200 working days prior to her injury, subsection B should apply to the calculation of her earnings from Maine Veterans and that her average weekly wage from her employment at Maine Veterans was properly calculated. Harrigan contends, however, and the Board apparently agreed, that subsection E requires the Board to apply the same calculation method to determine the average wage at the concurrent employment as the Board used to determine the wage at the employment responsible for the injury, in Harrigan's case subsection B, despite the fact that the concurrent earnings were from seasonal employment. Harrigan relies on the provision in subsection E that earnings in the concurrent employment shall be computed as if earned "in the employment of the employer for whom the employee was working at the time of the injury." 39–A M.R.S.A. § 102(4)(E). We are unpersuaded that the concurrent employment language in section 102(4)(E) operates to negate the ap-

plication of section 102(4)(C) to wages earned in seasonal employment.

[¶ 6] As Maine Veterans points out, failing to calculate the average weekly wage from Harrigan's position at Palace Playland pursuant to section 102(4)(C) results in a highly inflated average weekly wage to Harrigan,[2] and is inconsistent with the purpose of the average weekly wage statute "to arrive at an estimate of the 'employee's future earning capacity as fairly as possible.'" *Frank*, 687 A.2d at 625 (citation omitted). The seasonal employment provision was originally enacted with the purpose of preventing seasonal workers from collecting inflated benefits that would otherwise occur if their average weekly wage was calculated as non-seasonal earnings. P.L.1987, ch. 559, pt. B, § 14; Sen. Amend. B. to L.D.1929, No. S-307, Statement of Fact (113th Legis.1987) (the purpose was to "prevent an individual who is injured while working at a seasonal job from collecting benefits year-round at an artificially-enhanced rate").[3]

[¶ 7] Contrary to the contentions of Harrigan, and as we stated in *Valliere v. William Underwood Co.*, 537 A.2d 1161, 1162–63 (Me.1988), the concurrent wage provision in section 102(4)(E) "is not an independent alternative method of computing average weekly wages," but is intended to make clear that the employer legally liable for the payment of benefits to the employee for the injury is responsible for the payment of benefits that are based, in part, on the employee's lost earnings from her concurrent employment. The language of the statute and its purpose make it clear that an employee's average weekly wage from concurrent employment should be calculated separately, based on the nature of that employment,[4] and then added together with the average weekly wage from the other source of employment to arrive at a total average weekly wage that accurately reflects her actual earnings.

## II.

[¶ 8] Harrigan also contends that, even if subsection C were to apply to calculate the average weekly wage from concurrent employment in a seasonal position, her cashier position at Palace Playland, an amusement park open in the summer season only, is not inherently seasonal, and accordingly, subsection B, and not subsection C, should govern the determination of the wages from that employment. Harrigan relies primarily on *Frank*, 687 A.2d at 625, in which we held, in part, that it was error for the Board to treat the employee's "sporadic, short-term" employment as a construction worker, and temporary assignment as a factory worker, as "seasonal" employment for purposes of subsection C. *Id.* We stated:

> The word "seasonal" implies the work must have some relation to the seasons. According to Webster's Dictionary, the word "seasonal" means "[o]f, pertaining to, occurring at, or affected by the season or seasons; as, *seasonal* storms; *seasonal* industries." *Webster's New Collegiate Dictionary* 763 (2nd ed.1959). Seasonal em-

---

**2.** The Board's finding of $160 as Harrigan's gross weekly wages, carried out over 52 weeks, would result in total yearly gross earnings of $8,320. Her W–2 form for 1994 shows that her actual yearly earnings from Palace Playland were $1,644.81

**3.** Former title 39 has been repealed and replaced by Title 39–A. *Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, §§ A–7, A–8 (effective January 1, 1993). The former Act contained virtually identical language with respect to the average weekly wage issue presented in this appeal.

**4.** Harrigan also contends that the Board's result is supported pursuant to subsection D, applicable when the first three methods cannot be fairly applied. We disagree. Even if section 102(4)(D) could be construed to have application, it provides in pertinent part that "'average weekly

wages' means the sum, having regard to the previous wages, earnings or salary of the injured employee *and of other employees of the same or most similar class, working in the same or most similar employment in the same or a neighboring locality* ...." 39–A M.R.S.A. § 102(4)(D) (Supp. 1996) (emphasis added). Because Harrigan bore the burden of proof to establish the average weekly wage on her petition for award, *Frank*, 687 A.2d at 624, and because she provided no evidence of the earnings of comparable employees, there is no evidentiary basis to support a calculation of the average weekly wage pursuant to subsection D. *St. Pierre v. St. Regis Paper Co.*, 386 A.2d 714, 719–20 (Me.1978) (interpreting former 39 M.R.S.A. § 2(2)(C), *repealed by Workers' Compensation Act of 1992*, P.L.1992, ch. 885, § A–7).

ployment is employment that is inherently seasonal in nature, and not merely employment that is less than 26 weeks in duration. As Professor Larson states, pursuant to ordinary seasonal wage statutes, "it is the inherent seasonal nature of the employment that controls, not the claimant's seasonal connection with it." *See* 2 A. Larson, *The Law of Workmen's Compensation*, § 60.22(a), n. 39 (1993). Subparagraph 1 in Paragraph C is an "exclusion" to the definition of a "seasonal worker." The word "exclusion" suggests that the employee must first qualify as a "seasonal worker" and then meet the additional criteria of having worked less than 26 weeks in a calendar year.

*Id.* We also stated: "One employed as a ski instructor or a summer camp counsellor is a seasonal employee." *Id.* at 625 n. 2. Harrigan contends that a cashier position could, in theory, be available on a year-round basis, and is therefore, not inherently seasonal.

■ [¶ 9] Contrary to Harrigan's contention, "employment" within the meaning of seasonal employment set out in section 102(4)(C) does not refer to a generalized, theoretical vocation, such as "cashier," but to the employee's actual employment within a specific industry. Harrigan worked as a cashier, a common position in a seasonal amusement park, and readily admitted that the employment was summer employment only. The language of section 102(4)(C) does not require the Board to engage in a hypothetical inquiry as to whether every occupation in an admittedly seasonal industry could, in theory, be carried out on a year-round basis. The history of the seasonal employment calculation provision demonstrates that the primary legislative focus is on the industry itself, and not on the employee's duties within that industry. The language of subparagraphs 1 and 2 were originally added to former title 39 in 1989. P.L.1989, ch. 511 (codified at 39 M.R.S.A. 2(2)(B–1) (Supp. 1991)), *repealed by Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, § A–7. The Statement of Fact provides:

> This amendment provides that employees who are employed directly in agriculture or directly in wood harvesting or the first road transportation of harvested wood are considered seasonal workers under the Workers' Compensation Act even if they customarily work for more than 26 weeks in a calendar year. The amendment concentrates the potential savings under the seasonal workers' provision in that area of the State's economy that has experienced the highest workers' compensation insurance premium costs.

Sen. Amends. A and B to L.D. 1521, Nos. S–321, S–337, Statement of Fact (114th Legis.1989). It is significant that the statement of fact does not mention a vocation or occupation *within* an industry, but more broadly refers to the various seasonal *industries* that comprise a discrete "area" of the economy.

■ [¶ 10]To fall within subsection C, the employment must be both seasonal in nature and must not continue, full time or part-time, for more than 26 weeks in a calendar year. *Frank*, 687 A.2d at 625. Harrigan contends that, because the second sentence of subsection (C)(1) provides that "[t]he employee need not be employed by the same employer during this period to fall within this exclusion," the weeks she was employed at Maine Veterans must be used in determining whether her earnings from Palace Playland were seasonal. 39–A M.R.S.A. § 102(4)(C)(1). We disagree. Both the language of the statute and its purpose compel us to conclude that only those separate employments that are seasonal may be considered in the determination of the 26–week exclusion. It makes little sense to consider weeks of employment in unrelated nonseasonal employment for purposes of determining whether seasonal employment falls within the 26–week exclusion.

The entry is:

The decision of the Workers' Compensation Board vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.